IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLOMBIA

William A White                    [
   #13888-084                      [
   United States Penitentiary-     [
      Marion                       [
   PO Box 1000                     [        Case: 1:21-cv-02348 JURY DEMAND
   Marion, IL 62959                [        Assigned To : Contreras, Rudolph
                                   [        Assign. Date : 8/30/2021
v                                  [        Description: Pro Se Gen. Civ. (F-DECK)
                                   [
Kathy Hill                         [     Jury Trial Demanded
   USP-Marion                      [
   PO Box 2000                     [
   Marion, IL 62959                [
                                   [
Stacy Byram                        [
   USP-Marion                      [
   PO Box 2000                     [
   Marion, IL 62959                [
                                   [
Daniel Sproul, Warden              [
   USP-Marion                      [
   PO Box 2000                     [
   Marion, IL 62959                [
                                   [
Katherine Seireveld                [
   FCC-Terre Haute                 [
   4700 Bureau Road South          [
   Terre Haute, IN 47802           [
                                   [
Michael Collis                     [
   Bureau of Prisons               [
   Counter-Terrorism Unit          [
   320 1st St NW                   [
   Washington, DC 20534            [
                                   [
   196 N Foxcroft Ave Suite 201    [
   Martinsburg, WV 25401           [
                                   [
Federal Bureau of Prisons          [
   320 1st St NW                   [
   Washington, DC 20534            [
                                   [
William True                       [
   Last Known:                     [
   USP-Marion                      [
   PO Box 2000                     [
   Marion, IL 62959                [
                                   [
Guy Pagli                          [
   Director, Counter-Terrorism     [
      Unit, Bureau of Prisons      [
   320 1st St NW                   [
   Washington, DC 20534            [

COMPLAINT
---------

1)   Jury Trial is demanded in this matter.

-1-

2)  Administrative remedy in this matter is exhausted.

Statement of the Claim
----------------------

Parties, Venue, Jurisdiction
----------------------------

3)  I, William A White, am the Plaintiff in this matter and a federal
    prisoner serving an aggregate sentence of approximately 389 months
    in the custody of the BOP at the Communications Management Unit
    ("CMU") located in the
    United States Penitentiary ("USP") -- Marion in Marion, Illinois,
    in the Southern District of Illinois.  I reside in the Western
    District of Virginia under some interpretations of the term "reside".

4)  Defendant Federal Bureau of Prisons is the proper defendant for the
    Administrative Procedures Act ("APA") claims and is located in Wash-
    ington,DC in the District of Colombia.

5)  Michael Collis is an Intelligence Analyst employed by the BOP Counter-
    Terrorism Unit ("CTU") and is resident and/or committed the majority
    of the acts attributed to him in Washington, DC, and/or, Martinsburg,
    West Virginia, in the Southern District of West Virginia.  He is sued
    in his individual capacity.

6)  Daniel Sproul is Warden of USP-Marion and resides in the Southern
    District of Illinois.  When he was employed at ADX-Florence, he was
    involved in conduct, including interference with inmate mail and
    access to the Courts, that was enjoined by the US District Court for
    the District of Colorado.  Blackman v Torres 2013 US Dist LEXIS 148228

-2-

(D Co 2012). He is sued in his ... capacities.

7) Stacy Byram was at the time of the events described herein the Unit Manager for the USP-Marion CMU. She is sued in her individual capacity.

8) Katherine Seireveld is an attorney employed by the BOP who maintains her offices at the Federal Correctional Complex ("FCC") Terre Haute in Terre Haute, Indiana, in the Southern District of Indiana. She is sued in her individual capacity.

9) Kathy Hill was Intelligence Research Specialist at the USP-Marion CMU. She is sued in her individual capacity.

10) William True was warden of USP-Marion until about October or November 2019. He is sued in his individual capacity.

11) Guy Pagli was Director of the Bureau of Prisons's Counter-Terrorism Unit and is located in Washington, DC. He is sued in his individual capacity. Pagli resigned July 2021.

12) This court has jurisdiction and statutory authority over the Racketeer Influenced and Corrupt Organization Act ("RICO") claims pursuant to 18 USC §1964 and 28 USC §1331.

13) This court has jurisdiction and statutory authority over the Administrative Procedures Act ("APA") claims pursuant to 5 USC §701, et seq and 28 USC §1331.

14) This court has jurisdiction over the Religious Freedom Restoration Act ("RFRA") claims pursuant to 42 USC §2000bb-1 and 28 USC §1331.

15) This court has jurisdiction to enjoin un-Constitutional acts by Federal officials pursuant to Ex Parte Young 209 US 123 (1908). This Court has jurisdiction to award monetary damages against fed-

Six Unknown Named Agents of the Federal Bureau of Narcotics 403 US
388 (1971) and Constitutional common law.

16) This matter could be venued in this district or the Southern District
of Illinois, Western District of Virginia, Southern District of West
Virginia, or, Southern District of Indiana, pursuant to 28 USC §1391
(e)(1) and/or 18 USC §1965.  The United States has expressed a prefer-
ence that matters of this type not be venued in the Southern District
of Illinois.  see, eg, White v Dep't of Homeland Security SD Ill
Case No: 19-cv-210 / WD Va Case No: 21-cv-219 Doc 21.  It is be-
lieved that the majority of acts charged will be shown in discovery
to have occurred in this District, making venue most convenient in
this District.

Factual Allegations
-------------------

17) The American "white supremacist extremist" movement is a Trust oper-
ation run by the FBI's Domestic Terrorism Operations Unit ("DTOU").
see, eg, Golitsyn, Anatoliy.  New Lies for Old p 13-16, 229-231 (de-
scription of the OGPU's "Operation Trust").  As I have averred in
great detail elsewhere,I spent much of the period 2001 to 2008 dis-
rupting this operation.  see, eg, United States v White MD Fl Case
No: 13-cr-304  Doc 208.

18) In September 2007, US Attorney General Michael Mukasey ordered the
FBI and the DOJ to fabricate a reason to arrest me, what the FBI
came to call the "National Initiative Targeting Bill White".  see,
eg, Exh D(t), L(c) p 2.

19) The DOJ obtained a warrant for my arrest  October 17, 2008, and,
eventually prosecuted me four times in United States v White WD Va

-4-

Case No.: 08-cr-851, United States v White WD Va Case No: 13-cr-013, United States v White MD Fl Case No: 13-cr-304.

RICO Scheme #1:  Subornation of Perjury To Obstruct Justice In A Contemplated Future Prosecution Of Matthew Hale, Craig Cobb, And Others For The Murders Of Michael Lefkow And Donna Humphrey

----------------------------------------------------------------

20) On February 28, 2005, a man named Bart Ross broke into the home of US District Judge for the Northern District of Illinois Joan Lefkow in Chicago, Illinois, and, murdered her husband Michael Lefkow and her mother Donna Humphrey.  Ross committed suicide March 10, 2005, near the home of a US Appellate Judge for the Seventh Circuit.

21) On March 2006, a man named Craig Cobb, who was a member of the World Church of the Creator, approached me online and stated that he had recruited Ross to murder the Lefkow family in retaliation for a judgment Lefkow had entered against the Church and its leader Matthew Hale.  This judgment led to a sequence of events that resulted in Hale's imprisonment for soliciting Lefkow's murder.  In support of his claim, Cobb provided me with audio recording of him soliciting Ross, as well as photographs, an alleged floorplan of the Lefkow home, and, other supporting documents.

22) Between March 2006 and July 2008, I attempted to turn Cobb's information over to federal authorities.  Ultimately, they refused to meet with me and indicted me for being an alleged fanatical follower of Hale who was trying to harm Hale's jury foreman.  The disconnect between this false prosecution and reality now makes my testimony as to what actually occurred unpalatable to the Department of Justice and its organs (collectively referred to as the "DOJ").

23) In March 2015, the FBI became aware that Cobb had confessed to me
and provided me with substantial corroborating evidence when I in-
formed them of such against the advice of counsel. Though the FBI
was told that emails from Cobb, such as the one attached as <u>Exh P(i)</u>,
an email from Cobb relating to a warning I'd given him after my 2011
release from prison about the FBI seizure of his confession, were
in their possession, the FBI never followed up to obtain the emails
or the confession.

24) 

25) In about June 2016, I arrived at the United States Penitentiary --
("USP") -- Marion in Marion, Illinois and was assigned to the Com-
munications Management Unit ("CMU"). Because I am housed in the
CMU, all of my communications are monitored by the BOP's Counter-
Terrorism Unit ("CTU"), which individually reads and approves each
communication before it goes out.

26) Kathy Hill is the Intelligence Research Specialist ("IRS") at the
USP-Marion CMU. She personally receives all mail from USP-Marion
CMU inmates and conveys it to the post office. Guy Pagli is the
Director of the BOP CTU. Both are personally involved in the manage-
ment and recruitment of informants on the USP-Marion CMU unit.

27) 



32) In about December 2019, Sproul replaced True as Warden of USP-Marion and joined the CMU Organization, meeting with Hill, Byram, Pagli, and/or, others, and, agreeing to join them in violating 18 USC §1503 and 18 USC §1512(b) by attempting to influence testimony that I would give in a contemplated future prosecution of Hale, Cobb, and/or, others for the murders of Lefkow and Humphrey.

33) Also in about December 2019, Collis communicated with Sproul, Hill, Pagli, Byram, and/or, others, and, joined the CMU Organization by communicating with Sproul, Hill, Byram, and/or, others, and agreeing to join them in violating 18 USC §1503 and 18 USC §1512(b) by attempting to influence testimony that I would give in a contemplated future prosecution of Hale, Cobb, and/or, others for the murders of Lefkow and Humphrey. From this point forward, Collis was assigned to read and individually approve all of my outgoing communications before they left the USP-Marion CMU.

34) 

35)    In February 2020, Sproul, Hill, Byram, Collis, Pagli, and/or, others unknown, met and agreed to bring Hale from the Administrative Super-max ("ADX") in Florence, Colorado, to USP-Marion CMU. On about July 1, 2020, Hale was taken on a one man van ride direct from ADX-Florence to USP-Marion CMU.

36) 

Incident Report
----------------

37)   On September 11, 2020, Collis approved the outgoing email communic-
      ation described in Exh H(k)(iv) and said communications were deliv-
      ered to Paul Angel, Managing Editor of the American Free Press news-
      paper.

38)   

39)   On October 6, 2020, after I refused the latest offer of cooperation,
      Collis wrote me incident report #3439466 attached as Exh H(k)(iv),
      one of a series of materially false incident reports accusing me
      of communications violations, in part for sending the previously
      approved communication Exh H(k)(iv) to Paul Angel.

40)   While three other similar incident reports written by Collis at this
      same time were administratively dismissed, on May 11, 2021, the
      Federal Bureau of Prisons took final agency action and refused to
      vacate and expunge the incident report attached as Exh H(k)(iv).

RICO Scheme #2: Retaliation Against Me For Testimony Given In The 18
USC §3582(c) Proceeding In <u>United States v White</u> WD Va Case No:
08-cr-054 By Imposing A "Mail Restriction" Until I Agree To Recant
My Testimony

41) I maintain my innocence as to all charges and since 2013 have sought
post-conviction relief in numerous proceedings.  In furtherance of
this effort, since August 2016, I have been involved in numerous FOIA
proceedings against federal agencies, including <u>White v Dep't of
Justice</u> SD Ill Case No:  16-cv-948, <u>White v Exec Ofc of US Attys</u>
SD Ill Case No:  18-cv-841, <u>White v Dep't of Homeland Security</u> SD
Ill Case No:  19-cv-210 / WD Va Case No:  21-cv-219.

42) During the period 2016 to 2020, the DOJ made numerous "inaccurate"
statements to federal courts claiming that my belief that the FBI
creates fake "white supremacist extremist" groups as part of a Trust
operation and that I was targeted by a national initiative is a
"conspiracy theory", "lie", and/or, "delusion."  One Court, for in-
stance, the Western District of Virginia, described my beliefs as
"patently false and frivolous" and refused to grant me discovery
on that basis.  <u>White v United States</u> 2017 US Dist LEXIS 83694 (WD
Va 2017).  The Judge who entered that Order, Glenn Conrad of the
Western District of Virginia, has, in light of the documents I've
obtained in FOIA, admitted that this statement was "inaccurate".
<u>White v United States</u> 2020 US Dist LEXIS 232381 (WD Va 2020).

43) 

44) On September 25, 2020, I testified by declaration mailed to the
Western District of Virginia in United States v White WD Va Case No:
08-cr-054 Doc 411 as to the years that I spent infiltrating and dis-
rupting the FBI's fake "white supremacist extremist" movement;  this
declaration had been composed September 5, 2020.  I subsequently
expanded on this testimony in proceedings like United States v White
MD Fl Case No:  13-cr-304.

45) Between September 25, 2020, and, October 15, 2020, Collis and Pagli
                          prepared a letter to Sproul sug-
gesting that Sproul join        a conspiracy to obstruct justice in
United States v White WD Va Case No:  08-cr-054 and, other   proceed-
ings in which I might similarly testify as to FBI undercover opera-
tions, by retaliating against me for the testimony given in United
States v White WD Va Case No:  08-cr-054 and barring me from using
the postal mail or any other form of communication to contact any
person outside of the USP-Marion CMU except my mother and the Courts
until I agreed to recant my testimony. ("RICO Scheme #2").

46) No later than October 15, 2020, Sproul, Byram, and, Seireveld met and
agreed with Collis that the CMU Organization
                          would seek to obstruct justice
in my legal proceedings, including by preventing me from raising
money to pay my court costs and other legal fees, and, retaliate
against me for my sworn testimony in United States v White WD Va Case

mail or any other means with any person other than my mother and the courts. Seireveld travelled in interstate commerce to attend this meeting.

47) No later than October 15, 2020, Hill agreed to join RICO Scheme #2 by agreeing to refuse to deliver for mailing to the US Post Office any mail which I should tender to her.

48) On October 16, 2020, Sproul, Byram and Seireveld signed a notice, attached as Exh H(m), indefinitely barring me from communicating by postal mail with any person except my mother and the courts.

49) On October 22, 2020, Hill handed me a number of notices authored by Collis and signed by Sproul stating that I was being placed on "mail restriction" for having made statements in my "legal filings", my sworn testimony in United States v White WD Va Case No: 08-cr-054, about undercover FBI operations which the CMU Organization was prohibiting me from making. I note that the state-ment that I had instructed any person to retrieve this information in PACER is untrue, as evidenced by the letter to which this notice was attached, Exh H(1)(i)(B).

50) Soon after my receipt of the notices of para 49, supra, I informed Byram that ordering me to change my testimony or not to testify was criminal witness tampering. Future notices were thus changed to state that I had made statements in the mail which I had been pro-hibited from making, such statements being the aforementined sworn testimony, and, eventually, to claim that my sworn testimony con-stituted a "threat" pursuant to 18 USC §876, and, that, thus, the members of the CMU Organization were justified in preventing me from testifying in order to protect the public from "threats".

51) In order to pay for my litigation against the United States I collect

-13-

donations from such persons either in person or by postal mail. In the twelve months prior to the institution of the "mail restriction", I collected an average of about $1130.00 (one thousand one hundred and thirty) dollars a month from such persons. As a result of the mail restriction and the actions of the CMU Organization, I am currently receiving no donations from persons I corresponded with by mail, injuring me in my property and business.

52) Under the terms of the mail ban, I am prohibited from communicating by mail with:

a) attorneys, including, at times, attorneys representing me in active cases;

b) elected officials;

c) the media, including for things as simple as subscribing or cancelling a subscription;

d) religious persons;

e) all persons other than my mother and the Courts.

53) 



54)   On December 9, 2021, Collis blocked sixteen outgoing emails from my-
self to my mother, my counsel Maria Gonzalez, and, Paul Angel, all
on religious subjects, another set of claimed violations of 18 USC

55) To prevent me from reporting their acts of obstruction and witness re-
taliation to federal law enforcement, including the BOP North-Central
Regional and Central Offices, Sproul refused to process my administra-
tive remedies in at least 32 cases between October 2020 and the pre-
sent, or, refused to properly process them.

                              Each of these acts violated 18 USC §1512
(d).

56) As a result of the actions of the CMU   Organization and the impos-
ition of the mail restriction by the defendants, I have been injured
in my business and property $9040.00 ( nine thousand zero hundred and
forty  dollars and no cents) to date and am suffering losses of of
$1130.00 (one thousand one hundred and thirty dollars) per month.

57) On February 3, 2021, April 22,2021, and, May 18, 2021, the Federal
Bureau of Prisons took final agency action refusing to stop the
CMU   Organization from continuing to enforce the mail restriction.
or from engaging in its pattern of racketeering activity.

RFRA Violation
--------------

58) I practice Tradition, which is a religious belief handed down by God
to man at the beginning of time; it is very similar to the Christian-
ity of the Paulicians or Cathars. Specifically, I believe in ideal
worlds of light and darkness, and, that, in the beginning, many of
those who now live in this world were angelic beings living in what
is often called heaven. An evil being, Judah, entered heaven and se-
duced away from service to the true God the brightest of those angels,
and, persuaded him to create this world as an act of rebellion. When
the true god discovered this, he fought a war with the rebel and his
angels, eventually imprisoning them in this world as a place of pun-

-16-

ishment, causing this Demiurge and his followers to forget their
true origins. When those origins are recalled, and, the Tradition
that accompanied them revealed, the imprisoned being learns that to
return to the true heaven he must completely detach from this world,
live in accordance with the original Order, and, bring the self back
into submission to the Will of the true god.

59) The antithesis of Tradition is the Kabala, which is the religion of
the Demiurge, who is Satan and the Devil called YHWH. The teachings
of the Kabala lead man out of this world and into the world of dark-
ness and not back to the light.

60) Tradition has existed in counterpoise to Kabala for many thousands
of years. Kabala was integrated into the Catholic Church from the
beginning, where Peter took his name from the hierophant of the then
decadent Eleusinian Mysteries and integrated the Devil's teachings
into the Church at Rome from the beginning. This situation grew
worse with the conversion of the monks of Serapis under Pacomis and
Kabala became integrated into Church dogma with the teachings of the
Egyptian Fathers, this movement culminating in the works of Dionysos
the Aeropagite. After the Carolingians usurped the Merovingians
in France, a counter-poise to the Roman spirit developed in Germany,
though it was also quickly corrupted after the reign of Charlemagne.
These two forces, both infiltrated with Hermeticiam and Kabala, re-
mained the dominant forces in Europe through the investiture crisis
and the Guelph-Ghibelline conflict, which was eventually resolved in
a way with the inheritance of the Empire by the Catholic Hapsburgs.
However, about the same time, Kabalistic works, including Hermetic
and neo-Platonic works, were entering Italy from the crumbling Byzant-
ine Empire; the intellectual trends these stoked came together at

-17-

Judaeo-Christianity came together in the synthesis of Pico della Mirandola. From there, Christian Kabala spread, one, to England and then Bohemia and the Palatine, where it came to inform the Protestant movements and eventually Rosicrucianism and Masonry, and, then, also, within the Church, where it particularly informed in a different way the Jesuits and the Counter-Reformation. Ultimately, practitioners of Masonic Kabala drove the French Revolution. And, the French Revolution disillusioned one Freemason, Joseph de Maistre, who converted to Catholicism and who ultimately sparked the modern Tradition movement. By the end of the 19th century, Tradition had moved away from Catholicism to integrate Vedic and Sufi Islamic influences, as demonstrated by the works of Rene Guenon, who is the father of 20th century Traditionalism, and, the primary influence on Julius Evola, the main philosopher of Tradition. Parallel to this in Germany a German Kabala movement, also influenced by Sufi Islam and Catholicism, formed under persons like Guido List, Liebenfels and Sebottendorff, culminating in the founding of the Thule Society, which also integrated Germanic and Norse paganism, and, which informed many of the thinkers of the German Third Reich. After World War II, the intellectual strands represented by Evola and National Socialism were reconciled by Savitri Devi, another leading thinker of Tradition. And, that should be enough to establish that Tradition is an actual religion for purposes of the RFRA.

61) I note that Tradition is not a "white supremacist" belief system nor is it related to Creativity. see, eg, <u>Hale v Fed Bureau of Prisons</u> 2018 US Dist LEXIS 52447 (10th Cir 2018).

62) I practice Tradition in numerous ways, not only with a general ethical standpoint, but, through yogic prayer six days a week and by re-

63)     Part of my Traditional religious practice is the research of ancient and modern religious practices to divine the influence of divine beings in human history (the avatara and others) and to determine the exact details of what god originally communicated to man.  As part of this practice, I have to communicate with other persons on this subject.

64),     Between 2017 and 2020, I authored a book, Volume III of my <u>Serpent's Blood</u> series, entitled <u>Jove-Tetragrammaton:  The Semitic Origins Of Roman Imperialism</u>.  The text is attached as <u>Exh H(n)</u>.  In sum, this is an exploration of the development of Kabala as the mystery religion of Babylon and its translation to Rome via Phoenicia and Greece, where it laid a foundation for Rome to become an instrument by which the fallen god, Lucifer-YHWH, Roman Jove, engaged in one of his efforts to conquer the earth.

65)



66)



67)



Case 3:22-cv-00084-GEC Document 1-17 Filed 10/18/21 Page 2 of 22 Pageid# 212

--------------------------------------------------------------------

68)   Para 1-67, supra, are hereby incorporated by reference.

69)   Sproul, True, Collis, Byram, Hill, Seireveld, Pagli, and, others unknown
      violated the RICO Act, 18 USC §1961, et seq, by forming and/or join-
      ing the CMU Organization and engaging in a pattern of racketeering
      activity that includes:

      a)   RICO Scheme #1, The Lefkow Scheme, where, as described para 20-
           36, supra, from no later than July 2, 2019 to the present, the
           CMU Organization attempted to suborn perjury from me in the pro-
           spective future prosecution of Craig Cobb, Matthew Hale, and/or,
           others, for the murders of Michael Lefkow and Donna Humphrey,
           by committing two acts in violation of 18 USC §1503 and 18 USC
           §1512, with the intent of victimizing Hale, Cobb, the US District
           Court for the Northern District of Illinois, and/or, others;

      b)   RICO Scheme #2, The Mail Restriction Scheme, where, as described
           para 41-57 supra, from no later than October 15, 2020, to the
           present, the CMU Organization attempted to influence my testimony
           in United States v White WD Va Case No:  08-cr-054 by barring
           me from communicating with all persons by postal mail or any
           other means except my mother and the Courts until I agreed to
           recant the testimony of United States v White WD Va Case No:
           08-cr-054, committing 110 RICO predicate acts in violation of
           18 USC §1503, 18 USC §1512, and, 18 USC §1952, victimizing my-
           self, 48 recipients of my mail, and, the United States District
           Court for the Westerrn District of Virginia, and/or, others;

      c)   Additional RICO Schemes, such as the Cox Scheme, as described
           para 66-67 supra.

      Due to this pattern of RICO activity I have been damaged in my busi-
      ness and property in the amount of $9040.00 to date with ongoing
      damages of $1130.00 per month.

$3390.00 per month as well as triple my costs of bringing this
action pursuant to 18 USC §1962(c).

71) Additionally, I ask that this Court use its power to enjoin persons
engaged in a RICO enterprise from engaging in the same endeavors to
bar each of the defendants from continuing employment with the Fed-
eral Bureau of Prisons or any other federal law enforcement agency,
pursuant to 18 USC §1964 (c).

COUNT TWO:  CONSPIRACY TO VIOLATE RICO 18 USC §1962(d)
-------------------------------------------------------

72) Para 1-67, supra, are hereby incorporated by reference.

73) Sproul, Collis, Byram, Hill, Seireveld, True, Pagli, and, others unknown
conspired to violate the RICO Act in violation of 18 USC §1962(d)
by forming and/or joining the CMU Organization as described para 20-
67,   supra, for the purposes of engaging in a pattern of racket-
eering that includes RICO Scheme #1, The Lefkow Scheme, RICO Scheme
#2, The Mail Restriction Scheme, And, Additonal RICO Schemes, such
as the Cox Scheme, as described para 66-67 supra, and the commission
of violations of 18 USC §1503, 18 USC §1512, 18 USC §1952, and/or,
other federal statutes, affecting numerous victims and with distinct
purposes.  As a result of this conspiracy I suffered harm in my bus-
iness and property in the amount of $9040.00 to date with ongoing
damages of $1130.00 per month.

74) As relief, I request triple damages of $27,1200.00 to date and
$3390.00 per month as well as triple my costs of bringing this
action pursuant to 18 USC §1962(c).

75) Additionally, I ask that this Court use its power to enjoin persons
engaged in a RICO enterprise from engaging in the same endeavors to

bar each of the defendants from continuing employment with the Federal Bureau of Prisons or any other federal law enforcement agency, pursuant to 18 USC §1964(c).


COUNT THREE:  VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT 5 USC §701, et seq

----------------------------------------------------------------

76) Para 1-67, supra, are hereby incorporated by reference.

77) The Federal Bureau of Prisons violated the APA when it unlawfully withheld or unreasonably delayed my access to the US Postal mail and other forms of communications through the CMU   Organization's mail restriction described para 41-57, supra, which:

a) is an arbitrary and capricious action that abused its discretion or otherwise did not accord with law, including 18 USC §1503, 18

§1717, 18 USC §1951, et seq, 18 USC §1961, et seq, 28 CFR §501.2-3, 28 CFR §540.14-15, 28 CFR §540-19-20, and 28 CFR §540.203;

b)  is contrary to my Constitutional rights, its powers, my privileges and immunities pursuant to US Const Amend I and V;

c)  is in excess of its statutory jurisdiction, authority, or, limitations, and, short of my statutory rights, including 18 USC §1503, 18 USC §1512, 18 USC §1693, 18 USC §1700, 18 USC §1701, 18 USC §1717, 18 USC §1951, et seq, 18 USC §1961, et seq, 28 CFR §501.2-3, 28 CFR §540.14-15, 28 CFR §540.19-20, and, 28 CFR §540.203;

d)  is without observance of the procedures required by law, including 28 CFR §501.2-3, 28 CFR §540.14-15, 28 CFR §540.19-20, and, 28 CFR §540.203;

e)  is in a manner unsupported by substantial evidence; and,

f)  is in a manner unwarranted by the facts.

78) As relief, I request an Order be entered commanding defendant Federal Bureau of Prisons to stop the enforcement of the mail restriction.

COUNT FOUR:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
---------------------------------------------------------------------

79) Para 1-67, supra, are hereby incorporated by reference.

80) Sproul, Collis, Byram, Hill, Seireveld and Pagli violated US Const Amend I when they banned me from sending or receiving mail from all persons in retaliation for my having testified against their wishes in Court, as described para 41-57, supra.

81) As relief I request an injunction barring the defendants from enforcing their "mail restriction" and nominal, compensatory, and, punitive damages, including economic damages of $9040.00 to date and $1130.00 per month.

------------------------------------------------------------------

82) <u>Para</u> 1-67, supra, are hereby incorporated by reference.

83) Sproul, Collis, Byram, Hill, Seireveld and Pagli violated US Const Amen
    V by imposing extraordinary conditions of confinement on me without
    procedural or substantive Due Process, resulting in the loss of don-
    ations, a taking without procedural or substantive Due Process, and,
    without giving me any idea of how I can obtain the release of the
    extraordinary conditions of confinement, the mail restriction, other
    then by committing perjury at their direction in my federal proceed-
    ings, as described <u>para</u> 41-57, supra.

84) As relief, I request an injunction barring the defendants from en-
    forcing their "mail restriction" and nominal, compensatory, and, pun-
    itive damages, including economic damages of $9040.00 to date and
    $1130.00 per month.

COUNT SIX:  VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT 42 USC
            §2000bb-1
------------------------------------------------------------------

85) <u>Para</u> 1-67, supra, are hereby incorporated by reference.

86) 

87) As relief, I ask that the defendants be ordered to allow me to mail
    my book <u>Jove-Tetragrammaton</u> and portions thereof to other persons,
    that the mail restriction be lifted as to religious communications,
    and, that I receive nominal, compensatory, and, punitive damages.

--------------------------------------------------------------------

88)  <u>Para</u> 1-67, supra, are hereby incorporated by reference.

89)  The Federal Bureau of Prisons violated the APA when it unlawfully
     withheld or unreasonably delayed expungement of incident report
     #3439466, as described <u>para</u> 37-40, supra, which:

     a)  is an arbitrary and capricious action that abused its discretion
         or otherwise did not accord with the law, including 18 USC §4042
         {a)(3) as implemented by 28 CFR §541.1-8 and 18 USC §4042(a)(1)-
         (3) as implemented by 28 CFR §540.100-106;

     b)  is contrary to Constitutional rights, its processes, and, my
         privileges and immunities pursuant to US Const Amend I;

     c)  is in excess of its statutory jurisdiction, authority, or, lim-
         itations and short of my statutory rights, including under 18
         USC §4042(a)(3) as implemented by 28 CFR §541.1-8 and 18 USC
         18 USC §4042(a)(1)-(3) as implemented by 28 CFR §540.100-106;

     d)  is without observance of the procedures required by law, includ-
         ing 18 USC §4042(a)(3) as implemented by 28 CFR §541.1-8 and
         18 USC §4042(a)(1)-(3) as implemented by 28 CFR §540.100-106;

     e)  is in a manner unsupported by substantial evidence; and,

     f)  is in a manner unwarranted by the facts.

90)  As relief, I ask that the Federal Bureau of Prisons be ordered to
     expunge incident report #3439466.

COUNT EIGHT:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
--------------------------------------------------------------------

91)  <u>Para</u> 1-67, supra, are hereby incorporated by reference.

92)  Collis violated US Const Amend I when he wrote me incident report
     #3439466 in retaliation for my refusal to accept a Fed.R.Crim.P.

                              -27-

agreement, as described <u>para</u> 8.175, supra.

93)     As relief, I ask that the Federal Bureau of Prisons be ordered to expunge incident report #3439466 as well as nominal, compensatory, and, punitive damages from Collis.

Respectfully Submitted,

William A White #13888-084
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF MAILING
----------------------

I hereby certify that this Complaint was mailed to the Clerk of the United States District Court for the District of Colombia, 1st Class Postage prepaid, this 13th day of August, 2021.

William A White