IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. WHITE, #13888-084,<br><br>        Plaintiff,<br><br>v.<br><br>KATHY HILL,<br>STACY BYRAM,<br>DANIEL SPROUL,<br>KATHERINE SEIREVELD,<br>MICHAEL COLLIS,<br>FEDERAL BUREAU OF PRISONS,<br>WILLAIM TRUE, and<br>GUY PAGLI,<br><br>        Defendants. | Case No. 22-cv-00133-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

William White, an inmate in the custody of the Federal Bureau of Prisons ("BOP") and currently incarcerated at the Federal Correctional Institution located in Cumberland, Maryland, commenced this action by filing a Complaint with the United States District Court for the District of Columbia alleging constitutional and statutory violations that occurred while he was housed at the United States Penitentiary in Marion, Illinois ("USP Marion"). (Doc. 1). The D.C. Court granted Defendants' motion to transfer the case to the Southern District of Illinois. (Doc. 17). The court found that because most of the defendants were located in the Southern District of Illinois, where the events alleged occurred, the convenience of the parties and witnesses weighed in favor of transfer.

This case is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-

meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

In the Complaint, Plaintiff states that he arrived at USP Marion in June 2016 and was assigned to the Communications Management Unit ("CMU"). (Doc. 9, p. 6). Because he was housed in the CMU, all his communications were monitored by BOP's Counter-Terrorism Unit ("CTU").

At various times from 2018 through 2020, Plaintiff alleges that confidential informants approached him at the direction of Defendants asking him to provide false testimony that would assist in the future prosecution of another federal prisoner, Matthew Hale, and an individual named Craig Cobb for murder. In exchange for Plaintiff's testimony and Plaintiff confessing to the federal crimes with which he had been charged and convicted, Plaintiff would be release from prison. Plaintiff always declined these offers. (Doc. 9, p. 6-8). At one point, informants told Plaintiff that if he did not cooperate, then things would go badly for him. (*Id.* at p. 8).

On September 11, 2020, Michael Collis, an intelligence analyst with the CTU, approved Plaintiff's outgoing mail to addressed to Paul Angel, the managing editor of a newspaper called the American Free Press. (Doc. 9, p. 10). However, on October 6, 2020, Collis wrote Plaintiff an incident report for the sending the approved correspondence to Paul Angel, accusing Plaintiff of communications violations. (*Id.*).

On September 25, 2020, Plaintiff sent a declaration to be filed in his underlying criminal case describing the years he spent infiltrating and disrupting the FBI's fake white supremacist extremist movement. (Doc. 9, p. 12). In retaliation for submitting his written testimony, Defendants barred Plaintiff from using the postal mail service or any other form of communication

to contact any person outside of USP Marion, except his mother and the courts. Plaintiff was also prevented from raising money to pay for his court costs and other legal fees. (*Id.* at p. 12-14).

Plaintiff asserts that the mail restrictions imposed by Defendants have infringed on his ability to practice his religion. Plaintiff practices the religion of Tradition. (Doc. 9, p. 16). Part of Plaintiff's religious practice includes:

> Research of ancient and modern religious practices to divine the influence of divine beings in human history…and to determine the exact details of what god originally communicated to man. As part of this practice, [Plaintiff has] to communicate with other persons on this subject.

(*Id.* at p. 19). Plaintiff has written a book discussing the history and development of Kabala, the "antithesis of Tradition," and its influence in Rome, "where it laid a foundation for Rome to become an instrument by which the fallen god, Lucifer-YHWH, Roman Jove, engaged in one of his efforts to conquer the earth." (*Id.* at p. 17, 19). Because of the mail restriction, Plaintiff was prohibited from sending his book to his publisher and other correspondents.

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following claims in this pro se action:

**Count 1:** Sproul, True, Collis, Byram, Hill, Seireveld, and Pagli violated the RICO Act, 18 U.S.C. § 1961, *et seq.*, by forming and/or joining the CMU Organization and engaging in a pattern of racketeering activity.

**Count 2:** Sproul, Collis, Byram, Hill, Seireveld, True, and Pagli violated the RICO Act, 18 U.S.C. §1962(d) by conspiring to violate Section 1962(c) of the RICO Act.

**Count 3:** APA claim against the Federal Bureau of Prisons under 5 U.S.C. § 701, *et seq.*, for unlawfully withholding or unreasonably delaying Plaintiff's access to the United States Postal mail and other forms of communications through CMU.

**Count 4:** APA claim against the Federal Bureau of Prisons under 5 U.S.C. § 701, *et seq.*, for unlawfully withholding or unreasonably delaying

|  |  |
|---|---|
|  | expungement of incident report #3439466. |
| **Count 5:** | First Amendment claim against Sproul, Collis, Byram, Hill, Seireveld, and Pagli for retaliating against Plaintiff for testifying against their wishes in court. |
| **Count 6:** | First Amendment claim against Collis for writing Plaintiff an incident report in retaliation for Plaintiff's refusal to accept a cooperation agreement. |
| **Count 7:** | Fifth Amendment claim against Sproul, Collis, Byram, Hill, Seireveld, and Pagli for imposing extraordinary conditions of confinement on Plaintiff without procedural or substantive due process rights. |
| **Count 8:** | RFRA claim against Sproul, Collis, Byram, Hill, Seireveld, and Pagli for prohibiting Plaintiff from sharing portions of his book *Jove-Tetragrammaton*. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequate pled under the *Twombly*[1] pleading standard.

## Counts 1 and 2

Section 1962(c)[2] of the Racketeer Influenced and Corrupt Organizations (RICO) statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). For any person "injured in his business or property by reason of a violation" of the RICO statute, 18 U.S.C. § 1964, confers a private right of action for treble damages. *See Bible v. United Student Aid Funds, Inc.,* 799 F. 3d 633, 655 (7th Cir. 2015). A RICO plaintiff alleging a violation of § 1962(c) in a civil action "must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lachmund v. ADM Investor Serv., Inc.,* 191 F. 3d 777, 783

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[2] *See* Doc. 9, p. 23.

(7th Cir. 1999). To "plead adequately a pattern of racketeering activity, a plaintiff must allege with particularity two predicate acts." *Id.* Furthermore, the type of injuries cognizable under the RICO statute are limited. "The requirement that civil RICO plaintiffs allege an injury to 'business or property' serves to preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Ryder v. Hyles,* 27 F. 4 1253, 1256-57 (7th Cir. 2022) (internal citations and quotations omitted).

Plaintiff alleges two RICO "schemes." In scheme #1, Plaintiff states that Defendants acted to induce him to give false testimony in the future prosecution of other individuals. (Doc. 9, p. 7, 22). In scheme #2, Plaintiff asserts that beginning on October 15, 2020 to the present, Defendants barred him from communicating with others through the mail or other means in an attempt to influence his testimony given in his underlying criminal case, *USA v. White,* Case No. 08-cr-0054-EKD-1 (W.D. Vir. 2008). (Doc. 9, p. 12, 22). This mail prohibition was implemented in retaliation against Plaintiff for previously filing a declaration in *USA v. White*. As a result, he was unable to correspond with individuals who provide him donations. Because of the mail restriction, he is receiving no donations, injuring his property and business. (*Id.* at p. 14).

Plaintiff cannot pursue claims under RICO, as he has not properly pled injury to his business or property. In *Evans v. City of Chicago,* the Seventh Circuit refused to recognize a plaintiff's lost income while falsely imprisoned by a police officer and the plaintiff's costs and fees incurred while defending against false charges as RICO injuries to business or property. 434 F. 3d 916, 924-25 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir.2013). Similarly, here, the Court finds that Plaintiff's inability to solicit donations due to the retaliatory mail restrictions is akin to loss of potential income as discussed in *Evans* and does not constitute "business or property" within the meaning of Section 1964. This injury is "plainly derivative" of his retaliation personal injury claim, which is not compensable under RICO.

*Ryder,* 27 F. 4th at 1257. *See also Cannon v. Burge,* 752 F. 3d 1079, 1088 n. 6 (7th Cir. 2014) (affirming district court's denial of motion to amend the complaint to add a RICO claim seeking damages for lost employment opportunities while imprisoned). Accordingly, Count 1 is dismissed.

Section 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) [of Section 1962]." 18 U.S.C. § 1962(d). Plaintiff states that "Defendants conspired to violate the RICO Act…by forming and/or joining the CMU Organization…for the purposes of engaging in a pattern of racketeering that includes" scheme #1, scheme #2, and other RICO Schemes. (Doc. 9, p. 23). Because Plaintiff has failed "failed to allege a legal basis for a substantive RICO claim it follows that he lacks a legal basis for a conspiracy claim under RICO." *Talley v. Savage,* No. 22-4186-KSM, 2022 WL 17573403, at *4 n. 8 (E.D. Penn. Dec. 8, 2022) (citing *Lightening Lube, Inc., v. Witco Corp.,* 4 F. 3d 1153, 1191 (3d Cir. 1993)). Count 2 is also dismissed.

### Counts 3 and 4

The Administrative Procedures Act ("APA") allows individuals adversely impacted by final federal agency action to seek judicial review. *See* 5 U.S.C. § 702. For an agency action to be final, two conditions must be satisfied:

> First, the action must mark the consummation of the agency's decision making process…it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear,* 520 U.S. 154, 177-78 (1997). Furthermore, a plaintiff may not seek damages under the APA but may pursue a claim for injunctive relief. *See* 5 U.S.C. § 702; *Veluchamy v. FDIC*, 706 F.3d 810, 812 (7th Cir. 2013) (APA authorizes injunctive relief and not money damages).

In Count 3, Plaintiff challenges the mail restrictions imposed on October 15, 2022, which

limited his communication to members of his immediate family and courts. (Doc. 9, p. 13, 24-25). He states that on February 3, 2021, April 22, 2021, and May 18, 2021, the Federal Bureau of Prisons "took final agency action refusing to stop the CMU Organization from continuing to enforce the mail restriction…" (*Id.* at p. 16). Plaintiff requests that the Federal Bureau of Prisons be ordered to stop the enforcement of the mail restriction. In Count 4, Plaintiff challenges the failure by the Federal Bureau of Prisons to expunge incident report #3439466. (Doc. 9, p. 27).

At this stage, Counts 3 and 4 will survive preliminary review. *See White v. Collis,* No. 20-cv-01117-JPG, 2021 WL 847987, at *3 (S.D. Ill. Mar. 5, 2021) (allowing similar claims to proceed past 1915A review).

### Counts 5, 6, and 7: Bivens Claims

Plaintiff brings his claims of constitutional violations under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). There is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal Government." *Ziglar v. Abbasi*, 582 U.S. 120 (2017). In *Bivens*, however, the Supreme Court recognized an implied action for damages to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id*. Since this decision, the Supreme Court has recognized only two other instances in which an implied damages remedy under *Bivens* is available for a constitutional deprivation – a Fifth Amendment sex discrimination claim, and an Eighth Amendment claim for denial of medical care for a serious medical condition. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). Recent cases have declined to extend a *Bivens* remedy to any other contexts and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Ziglar*, 582 U.S. at 135 (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (no

*Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

When presented with a proposed *Bivens* claim, a district court must undertake a two-step inquiry. *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). First, a court asks whether the case presents a new *Bivens* context, *i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court previously implied a damages action. *Ziglar*, 582 U.S. at 138-140. Second, if a claim arises in a new context, the court must consider whether any "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* If even one reason gives the court pause before extending *Bivens* into a new context, the court cannot recognize a *Bivens* remedy. *Hernandez,* 140 S. Ct. at 743.

Plaintiff claims that he was retaliated against by Sproul, Collis, Byram, Hill, Seireveld, and Pagli for filing legal documents, including declarations, in his criminal proceedings. (Doc. 9, p. 12). He also states he was retaliated against by Collis for refusing to cooperate with federal law enforcement regarding other investigations. The Supreme Court, however, has held that there is "no *Bivens* cause of action for [a] First Amendment retaliation claim." *Egbert*, 142 S. Ct. at 213. First, a claim under the First Amendment presents a new *Bivens* context. *See e.g., Doe v. Meron,* 929 F.3d 153, 167-70 (4th Cir. 2019); *Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018); *Sargent v. Barfield,* No. 2021 WL 2473805, at *2 (N.D. Ill. June 17, 2021). And second, special factors preclude expansion of *Bivens* to Plaintiff's First Amendment claims. As been recognized in this district, Plaintiff has other avenues of relief through the prison's administrative remedies program. *See Flournoy v. Sproul*, 2023 WL 1069293, at *2-3 (S.D. Ill. Jan. 27, 2023) ("this alternative remedy need not match the scope of relief available under *Bivens*"). Additionally, recognizing an implied damages remedy for retaliation claims would come at substantial costs to

the public and individual governmental staff. *Egbert*, 142 S. Ct at 1807. As the Supreme Court observed:

> A plaintiff can turn practically any adverse action into grounds for a retaliation claim. And, "[b]ecause an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on [retaliatory] intent may be less amenable to summary disposition." *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998). Even a frivolous retaliation claim "threaten[s] to set off broad-ranging discovery in which there is often no clear end to the relevant evidence." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1725 (2019) (internal quotation marks omitted). "[U]ndoubtedly," then, the "prospect of personal liability" under the First Amendment would lead "to new difficulties and expense." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988).

*Id.* Therefore, "Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action." *Id.* (citations and quotations excluded). Due to these special factors counseling hesitations in the expansion of *Bivens*, Plaintiff's claims that Defendants retaliated against him, Counts 5 and 6, are dismissed with prejudice.

Count 7 is also dismissed. Plaintiff asserts that Defendants violated his rights under the Fifth Amendment by imposing extraordinary conditions of confinement without procedural or substantive due process. (Doc. 9, p. 26). Plaintiff's assertion that his substantive due process rights were violated by the mail restrictions is more properly analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment rather than the Fifth Amendment's substantive due process right.[3] The Court "is unaware of any authority holding that restrictions on an inmate's communications with outsiders implicates Eighth Amendment concerns, and Plaintiff provides none." *Smadi v. Garland,* No. 18-cv-2149-JPG, 2023 WL 2743586, at *5 (S.D. Ill. Mar. 31, 2023). Thus, his conditions of confinement claim under the Eighth Amendment is dismissed.

---

[3] *See Helling v. McKinney,* 509 U.S. 25, 32 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."); *Albright v. Oliver,* 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim.") (plurality opinion of Rehnquist, C.J.) (internal quotations omitted).

Plaintiff's procedural due process claim is also unsuccessful. A procedural due process claim is not a recognized claim in which an implied damages remedy is available under *Bivens* case law. This claim presents a new *Bivens* context, and courts have found "special factors counseling hesitation," which preclude extending *Bivens* to this type of claim. *See Smadi v. True*, 783 F. App'x 633, 634 (7th Cir. 2019) (affirming district court's dismissal of due process claim at screening as indistinguishable from due process challenge rejected in *Abbasi*); *Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) (procedural due process claim arising from administrative and disciplinary proceedings). Some of these special factors include the prison's grievance procedure available to Plaintiff and inaction on the part of Congress to provide prisoners with a statutory damages remedy for prisoner mistreatment.

**Count 8**

Plaintiff assert that practices a religion called Tradition and part of his of his religious practice includes:

> [T]he research of ancient and modern religious practice to divine the influence of divine beings in human history…and to determine the exact details of what god originally communicated to man. As part of this practice, I have to communicate with other persons on this subject.

(Doc. 9, p. 19). He also practices Tradition by yogic prayer and refraining from eating meat. Plaintiff claims that because of the mail restrictions, he was unable to mail or email portions of a book he wrote to certain individuals on October 15, 2020, October 22, 2020, and December 9, 2020. He asserts that this resulted in an impermissible infringement on his religious practice. (*Id.*).

The Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq*., prohibits the Federal Government from imposing substantial burdens on the exercise of religion, absent a compelling interest pursued using the least restrictive means possible. *Tanzin v. Tanvir*, 141 S.Ct. 486, 489-91 (2020). The Court finds that Plaintiff has not pled facts from which the

Court can reasonably infer that his ability to exercise his religious beliefs were substantially burdened by the mail restrictions. While Plaintiff exercises his religion by conducting research and communicating about his faith with others, it is not clear to the Court how the inability to mail out portions of his book "seriously violates [his] religious beliefs" and that such conduct was based on his "religious belief and not some other motivation." *Holt v. Hobbs,* 574 U.S. 352, 361 (2015). Accordingly, Count 8 is dismissed.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 3** and **4** will proceed against the Federal Bureau of Prisons. **COUNTS 1, 2, 5, 6, 7,** and **8** are **DISMISSED.** As there are no surviving claims against Defendants Hill, Byram, Sproul, Seireveld, Collis, True, and Pagli, the Clerk is **DIRECTED** to terminate them as parties in this case.

The Clerk of Court is further **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant Federal Bureau of Prisons; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendant pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 12, 2023**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.